UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

KENNETH CUNNINGHAM,

                    Plaintiff,

        -against-                                          1:12-CV-0598 (LEK/CFH)

DAVID FIGURILLI; KATHLEEN
FLORIO; KENNY HASSETTE; TOM
GILLEN; JIM JONKOSKI; RYAN
OWENS; and ROMINA VILARDI,

                    Defendants.

_____

## MEMORANDUM-DECISION and ORDER

## I.      INTRODUCTION

On April 9, 2012, Plaintiff Kenneth Cunningham ("Plaintiff") filed a Complaint *pro se*

asserting a variety of claims arising from his employment at ShopRite Supermarkets, Inc.

("ShopRite").  Dkt. No. 1 ("Complaint").  In his Complaint, Plaintiff names as Defendants: David

Figurilli ("Figurilli"), President of ShopRite; Kathleen Florio ("Florio"), ShopRite employee; Tom

Gillen ("Gillen"), Ellenville, New York ShopRite Store General Manager; Jim Jonkoski

("Jonkoski"), Ellenville, New York ShopRite Assistant Store General Manager; Ryan Owens

("Owens"), Ellenville, New York ShopRite Store Manager; Romina Vilardi ("Vilardi"), Ellenville,

New York ShopRite Hiring Coordinator (collectively, "the ShopRite Defendants"); and Kenny

Hassette ("Hassette"), United Food and Commercial Workers International Union ("UFCW" or "the

Union") Local 1262 Union Repesentative.  On June 12, 2012, the ShopRite Defendants filed a

Motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  Dkt. No. 15 ("ShopRite Motion").  On October 17, 2012, Defendant Hassette also filed

a Motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). Dkt. No. 29 ("Hassette

Motion"). Plaintiff has not responded to either Motion. <u>See generally</u> Dkt. For the reasons that

follow, the Court grants both Motions, but affords Plaintiff limited leave to amend certain claims.

## II.    BACKGROUND

Plaintiff's Complaint generally raises claims relating to employment issues while he worked

at ShopRite as well as his dissatisfaction with his representation by UCFW during this time. <u>See</u>

<u>generally</u> Compl. The Complaint is meandering, but construed liberally alleges: (1) race and sex

discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) sexual harassment in

violation of Title VII; (3) violations of Plaintiff's rights under the Sixth and Fourteenth

Amendments to the United States Constitution; (4) violation of Plaintiff's right to privacy; (5)

*respondeat superior* liability as to Defendant Figurilli;[1] (6) violation of an "affirmative action clause

by not having . . . one black or latino manager"; and (7) breach of a collective bargaining agreement

by all Defendanst and breach of duty of fair representation by the UFCW. <u>See generally</u> id.

Plaintiff is a former employee of the Ellenville, New York ShopRite store. <u>Id.</u> at 6. Plaintiff

was terminated on November 1, 2011 at the culmination of what he describes as an ongoing pattern

of racially-motivated actions against him. <u>Id.</u> In July 2011, Plaintiff filed charges with the New

York State Division of Human Rights, and he received a right-to-sue letter in January 2012. <u>Id.</u> at 3.

Plaintiff alleges, *inter alia*, that while he was employed by ShopRite: (1) his hours of employment

---

[1] Plaintiff's "[f]irst cause of action" is nothing more than a statement that Defendant
Figurilli had knowledge of his employees' conduct and should be found liable under a theory of
*respondeat superior*. The ShopRite Defendants argue, correctly, that a defendant may be liable
under *respondeat superior* only for specific misfeasance, and not in the abstract for being a
supervisor. Nevertheless, in light of Plaintiff's *pro se* status, the Court construes this cause of action
as asserting why Defendant Figurilli should be held liable for the other acts alleged in the
Complaint, rather than as a distinct cause of action.

were reduced because of his race; (2) he was required to perform the job duties of two other employees (a black woman and a Latino man); and (3) he was sexually harassed.  See generally id.  Specifically, Plaintiff claims that Defendants Gillen and Jonkoski mistreated Plaintiff, gave him undesirable work assignments, and vindictively prevented him from working sufficient hours and getting his appropriate wages because of racial animus.  See id. at 4-5.  Plaintiff alleges that as a result of this conduct, he filed a grievance against Defendants Gillen and Jonkoski, who subsequently "violated his privacy" by reading the grievance.  Id. at 4.  Additionally, Plaintiff claims that on two occasions – one in November 2010 and one on October 24, 2011 – Defendant Vilardi made sexually inappropriate remarks to him.  Id. at 6.

Finally, Plaintiff contends that his rights under the parties' collective bargaining agreement ("CBA") were violated because the Union – through Defendant Hassette – failed to properly represent Plaintiff when he complained about the alleged misconduct on the part of the ShopRite Defendants.  Id.  For a more complete statement of the facts, reference is made to the Complaint.

## III.     LEGAL STANDARDS

### A.  Motion to Dismiss

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  Such a determination "requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679 (citation omitted).  A court must accept as true the factual allegations contained in the complaint and draw all inferences in favor of the plaintiff.  See Allaire Corp. v.

Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that he or she is entitled to relief and the action is subject to dismissal. See Iqbal, 556 U.S. at 678-79.

Under Local Rule 7.1(b)(3):

> Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion. . . .

N.Y.N.D. L.R. 7.1(b)(3). However, when a motion to dismiss is unopposed, the failure to oppose itself does not justify dismissal. See Haas v. Commerce Bank, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007). "In deciding an unopposed motion to dismiss, a court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. . . .'" Id. (quoting McCall v. Pataki, 232 F.3d 321, 322-23 (2d Cir. 2000)). When interpreting a *pro se* plaintiff's complaint in such a situation, a court should construe the complaint liberally and interpret it to raise the strongest arguments that it suggests. See Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 146 (2d Cir. 2002).

**B. Leave to Amend the Complaint**

Rule 15 of the Federal Rules of Civil Procedure state that "a party may amend its pleading only with the opposing party's written consent or the court's leave[,] . . . [but that t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). Additionally, the allegations of a *pro se* litigant are to be construed under a "less stringent standard[] than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). "A *pro se* plaintiff, particularly one bringing a civil rights action, should be afforded an opportunity fairly freely to amend his complaint." Holmes v. Goldin, 615 F.2d 83, 85 (2d Cir. 1980); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).

Additionally, "'[t]he party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial.'" Gorham-DiMaggio v. Countrywide Home Loans, Inc., No. 1:08-CV-019, 2009 WL 1748743, at *3 (N.D.N.Y. June 19, 2009) (quoting New York v. Panex Indus., Inc., No. 94-CV-0400, 1997 WL 128369, at *2 (W.D.N.Y. Mar. 14, 1997)). A district court is afforded broad discretionary power in granting leave to amend pleadings. Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998). However, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." Ruffolo v.

Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). Where "futility is an appropriate basis for denying leave to amend, such denial should be contemplated within the standards necessary to withstand a motion to dismiss pursuant to [Rule 12(b)(6)]." Gorham-DiMaggio, 2009 WL 1748743, at *3.

To be granted leave to amend a complaint that names a new party, Plaintiff must name a "new party [who must] be deemed to relate back to the original timely complaint." VKK Corp. v. Nat'l Football League, 244 F.3d 114, 128 (2d Cir. 2001). Further,

> [t]here are . . . three requirements that must be met before an amended complaint that names a new party can be deemed to relate back to the original timely complaint. First, both complaints must arise out of the same conduct, transaction, or occurrence. Second, the additional defendant must have been omitted from the original complaint by mistake. Third, the additional defendant must not be prejudiced by the delay.

Id. (citing Soto v. Brooklyn Corr. Facility, 80 F.3d 34, 35-36 (2d Cir. 1996)). The goal of these "relation back" principles outlined by the Second Circuit and drawn from Rule 15(c) of the Federal Rules of Civil Procedure is "to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense." Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19 (2d Cir. 1997) (quoting FED. R. CIV. P. 15 Advisory Committee Note (1991)) (internal quotation marks omitted); see also VKK Corp., 244 F.3d at 128.

## IV. DISCUSSION

### A. Defendant Hassette's Motion

While Plaintiff's allegations relating to the Union and its failure to protect him from ShopRite's discriminatory treatment are vaguely drawn and lacking substantial factual support, the Court liberally construes them as stating claims for breach of the of duty of fair representation under

6

the National Labor Relations Act[2] and the Labor-Management Relations Act ("LMRA").[3]  In his

Motion to dismiss Plaintiff's claims related to the UFCW's duties and alleged misdeeds, Defendant

Hassette contends that: (1) he is immune from liability as an individual union representative; (2)

some of Plaintiff's claims for breach of the duty of fair representation are time-barred; (3) Plaintiff's

Sixth Amendment claim is inapplicable to the facts of this case; and (4) Plaintiff's Complaint

generally fails to comport with the "short and plain statement of the claim" requirement of Rule 8(a)

of the Federal Rules of Civil Procedure.  See generally Hassette Mot.

### 1. Constitutional Claims

Plaintiff alleges that Defendant Hassette provided him with ineffective assistance at several

union meetings.  Compl. at 6.  First, Plaintiff's rights under the Sixth Amendment are not implicated

by any of the facts alleged, as this case does not involve a criminal prosecution.  To the extent that

Plaintiff has identified the wrong Constitutional Amendment or attempts to assert some due process

claim, his claim must still be dismissed.  Defendant Hassette is not a state actor, and therefore no

constitutional claim may properly be brought against him.  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526

U.S. 40, 50 (1999).  Therefore, these constitutional claims against Defendant Hasette are dismissed

with prejudice, as any amendment would be futile.  Additionally, even if Plaintiff were to name the

Union as a defendant instead of Defendant Hassette, the state action doctrine would still bar any

claims based on the Sixth or Fourteenth Amendments.

### 2. Breach of the Duty of Fair Representation

As to the claims relating to breach of the duty of fair representation, even if Plaintiff has

---

[2]  29 U.S.C. §§ 151-169.

[3]  29 U.S.C. § 185.

claims that might be properly and timely brought against the Union, suing Defendant Hassette, his local union representative, is not an appropriate avenue to seek redress of his grievances. The LMRA and "the caselaw provide a shield of immunity for individual union members in suits for breach of the duty of fair representation." Morris v. Local 819, Int'l. Bhd. of Teamsters, 169 F.3d 782, 784 (2d Cir. 1999) (citing Montplaisir v. Leighton, 875 F.2d 1, 4 (1st Cir. 1989) (holding that shield against fair representation suits extends to union's agents); Evangelista v. Inlandboatmen's Union, 777 F.2d 1390, 1400 (9th Cir. 1985); Bey v. Williams, 590 F. Supp. 1150, 1154-55 (W.D. Pa. 1984) (holding that union individuals immune from damages claims), aff'd without opinion, 782 F.2d 1026 (3d Cir. 1986)).

While the Court is mindful of Plaintiff's *pro se* status and the Second Circuit's instructions that a *pro se* plaintiff "should be afforded an opportunity fairly freely to amend his complaint," Holmes, 615 F.2d at 85, the Court dismisses all claims against Defendant Hassette with prejudice as futile. Forman, 371 U.S. at 182. Even if Plaintiff were to state additional facts, and even if the Union had breached its duty to Plaintiff, Defendant Hassette, as an individual union representative, would be shielded by immunity against any such claims. Morris, 169 F.3d at 784. Therefore, any amendment that sought to improve these claims against Defendant Hassette would be futile.

While the Court notes that the factual basis for any such claims in Plaintiff's Complaint is sparse, to the extent that Plaintiff still wishes to pursue claims relating to the Union's alleged deficiencies in representation, he is granted leave to amend his Complaint to seek relief from UFCW and *not* Defendant Hassette.[4]

---

[4] In providing Plaintiff with this opportunity to amend, the Court takes no position on whether any claims against the Union would be properly brought or whether they might survive another properly filed motion to dismiss. The Court concludes, however, that the general preference for allowing *pro se* plaintiffs to amend is not clearly outweighed by the futility of Plaintiff's

**B. The ShopRite Defendants' Motion**

In their Motion to dismiss Plaintiff's Complaint, the ShopRite Defendants argue that: (1) Plaintiff's claims under the Sixth and Fourteenth Amendments must be dismissed because the ShopRite Defendants are not state actors; (2) Plaintiff's action for violation of privacy is not cognizable under New York law; (3) Plaintiff's breach of CBA claims must be dismissed as untimely and because Plaintiff failed to exhaust his contractual remedies; and (4) Plaintiff's Title VII claims must be dismissed because Title VII does not provide for individual liability. See generally ShopRite Mot. Further, the ShopRite Defendants argue that even if the Court were to grant Plaintiff leave to amend his Complaint to name ShopRite, Inc. as a defendant for Title VII reasons, any such amendment would be futile because: (1) the Title VII claims are untimely; (2) Plaintiff failed to exhaust his administrative remedies as to the Title VII sexual harassment claim; and (3) Plaintiff's Title VII sexual harassment claim is insufficient as a matter of law. See generally id.

*1. Constitutional Claims*

For the reasons stated in Part IV.A.1, *supra*, Plaintiff's claims under the Sixth and Fourteenth Amendments are dismissed with prejudice. Like Defendant Hassette, none of the named ShopRite Defendants are state actors. Similarly, like the Union, ShopRite, Inc., even if named as a defendant, would also not be a state actor for purposes of this suit. Therefore, any amendment as to

---

hypothetical claims or the potential prejudice to the Union if it were to be named as a new defendant. Indeed, there is no support for an argument that the Union was deliberately or strategically omitted from Plaintiff's Complaint. See, e.g., VKK Corp., 244 F.3d at 128 (reversing the district court's holding because there was nothing to indicate that the plaintiff had engaged in a deliberate strategy by misidentifying the proper party); Advanced Magnetics, 106 F.3d at 19. Rather, the error in identifying the appropriate defendant appears attributable to the fact that Plaintiff submitted his Complaint as a *pro se* litigant.

these claims would be futile.

### 2. Privacy Claim

Plaintiff claims that Defendants Gillen and Jonkoski "violated [his] privacy by reading a grievance filed against them by . . . [P]laintiff ." Compl. at 4. As the Complaint currently stands, Plaintiff has failed to state a claim for "violation of privacy." "First, there simply is no common law right of privacy under New York law."[5] Richardson v. Newburgh Enlarged City School Dist., 984 F. Supp. 735, 748 (S.D.N.Y. 1997) (citing, *inter alia*, Groden v. Random House, Inc., 61 F.3d 1045, 1049 (2d Cir. 1995); Hurwitz v. United States, 884 F.2d 684, 685 (2d Cir. 1989)). Second, Plaintiff has failed to identify any sort of contractual right or other source for this protection or that might serve as the basis for this claim.

In their Motion, the ShopRite Defendants contend that "even if Plaintiff had some legally protected privacy rights, his allegations here surely would not support a claim for violation of those rights. If Plaintiff through his Union filed a grievance against his supervisors, of course his supervisors have a right to read the grievance." ShopRite Mot. at 13. While the ShopRite Defendants' argument may be intuitively logical, they provide no support for their assertion that "of course" Plaintiff's claim would fail. Further, despite the Court's lack of certainty as to the proposed basis for this claim, in light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend this claim.[6]

### 3. Breach of CBA

---

[5] The Court also notes that Plaintiff does not plead facts implicating or otherwise allude to New York State's privacy statute. See N.Y. Civ. Rights Law §§ 50-52.

[6] In addition to finding clear indicia of futility lacking in this case, the Court also notes that it finds no evidence that the ShopRite Defendants (or potential new defendant ShopRite, Inc.) would suffer prejudice as a result of any amendment to Plaintiff's Complaint. See Foman, 371 U.S. at 182.

As they currently stand, Plaintiff's claims relating to his employer's breach of the CBA are simply too vaguely drawn to survive the ShopRite Defendants' Motion to dismiss. Therefore, the Court dismisses these claims. However, in light of Plaintiff's *pro se* status, the Court treats these claims in the same way as it does Plaintiff's claims against the Union and grants Plaintiff leave to amend to flesh out these allegations.

In their Motion, the ShopRite Defendants contend that any claims relating to the breach of the CBA would be untimely and also barred because Plaintiff failed to exhaust his contractual remedies. In so arguing, the ShopRite Defendants emphasize that the alleged breaches by the Union and the ShopRite Defendants occurred in March 2011 and July 2011. ShopRite Mot. at 14-17. Section 301 of the LMRA governs an employer's duty to honor a CBA, and the duty of fair representation is implied under the scheme of the NLRA. See DelCostello v. Int'l Bhd of Teamsters, 462 U.S. 151, 164 (1983); White v. White Rose Food, a Div. of DiGiorgio Corp., 128 F.3d 110, 113-14 (2d Cir. 1997). "The limitations period on this hybrid § 301/[duty of fair representation] action is six months, which begins to run when the employee knew or should have known of the breach of the duty of fair representation." White, 128 F.3d at 114 (internal citations omitted). "The plaintiff may sue the union or the employer, or both, but must allege violations on the part of both." Id. (citing DelCostello, 462 U.S. at 165). Further, to bring such a claim, a plaintiff must have exhausted the grievance and arbitration remedies provided for under the applicable collective bargaining agreement. DelCostello, 462 U.S. at 163-64. However, a limited exception to this requirement exists in cases in which the union has breached its duty of fair representation and has refused to process an employee's grievances. Id.

In this case, the Court notes that Plaintiff's claims may in fact be time-barred and notes that

Plaintiff has failed to specify what grievance and arbitration remedies the CBA contains and whether he exhausted or attempted to exhaust them. See generally Compl. Nevertheless, in an abundance of caution, the Court gives Plaintiff leave to amend these claims, lest lack of legal training or inartful pleading bar potentially meritorious claims.

### 4. Title VII Claims

The basis for Plaintiff's Title VII claims is not entirely clear. Generally stated, though, Plaintiff asserts two categories of acts that violated Title VII: racial discrimination and sexual harassment. However, Title VII does not provide for individual liability. Patterson v. City of Oneida, 375 F.3d 206, 221 (2d Cir. 2004); Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010). Therefore, Plaintiff's Title VII claims against the ShopRite Defendants are dismissed with prejudice. In light of Plaintiff's *pro se* status, however, the Court considers whether it would be futile to grant Plaintiff leave to amend his Title VII claims to name ShopRite, Inc., as a defendant.

### a. Legal Standards

Title VII of the Civil Rights Act of 1964 states that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ambit of Title VII is quite broad, as it covers "the entire spectrum of disparate treatment . . . in employment, . . . includ[ing] requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

A Title VII hostile workplace violation occurs "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment.'" Id. (quoting

Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 67 (1986)).  However, the "'mere utterance of

an . . . epithet which engenders offensive feelings in a employee' does not sufficiently affect the

conditions of employment to implicate Title VII." Id.  "There is no heightened pleading

requirement for civil rights complaints alleging racial animus . . . and this Court has found such

claims sufficiently pleaded when the complaint stated simply that plaintiffs are African-Americans,

describe[d] defendants' actions in detail, and allege[d] that defendants selected [plaintiffs] for

maltreatment solely because of their color. " Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008)

(internal quotations and citation omitted) (quoting Phillip v. Univ. of Rochester, 316 F.3d 291,

298-99 (2d Cir. 2003)).

An actionable Title VII hostile work environment claim requires the fulfillment of both an

objective and subjective test.  See Harris, 510 U.S. at 21.  First, the conduct must create an

environment that, when viewed objectively, "a reasonable person would find hostile or abusive."

Id.  Second, the victim must "subjectively perceive the environment to be abusive" and the conduct

must "actually alter[] the conditions of the victim's employment." Id. at 21-22.  Therefore, "[s]o

long as the environment would reasonably be perceived, and is perceived, as hostile or abusive,

there is no need for it also to be psychologically injurious." Id. at 22.  To determine "[w]hether an

environment is 'hostile' or 'abusive,'" a court must "look[] at all the circumstances, which may

include the frequency of the discriminatory conduct; its severity; whether it is physically threatening

or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." Id. at 17.  Therefore, while "[t]he effect on the employee's

psychological well-being is relevant in determining whether the plaintiff actually found the

environment abusive[,] . . . like any other relevant factor, [it] may be taken into account, [but] no single factor is required." Id. Title VII's constructive discharge provision targets "harassment so intolerable as to cause a resignation . . . effected through co-worker conduct, unofficial supervisory conduct, or official company acts." Pa. State Police v. Suders, 542 U.S. 129, 131 (2004).

Under Title VII, a 300-day statute of limitations applies in a "case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . after the alleged unlawful practice occurred." 42 U.S.C.A. § 2000e-5(e)(1). When an employee is fired "pursuant to a continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it, provided such a continuing violation is clearly asserted both in the EEOC filing and in the complaint." Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 25 (2d Cir. 1985). However, "[t]he 300-day period, in the case of a discriminatory discharge, starts running on the date when the employee receives a definite notice of the termination, not upon his discharge." Id. at 23. In order to bring a Title VII discrimination case in federal court, the claim must first be properly raised within the statutory limitations period for filing a claim with the EEOC. Id.

Further, "[i]n order to be timely, a claim under Title VII . . . must be filed within 90 days of the claimant's receipt of a right-to-sue letter." Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 525 (2d Cir. 1996) (citations omitted). "Normally it is assumed that a mailed document is received three days after its mailing." Id. at 526 (citing Baldwin Cnty. Welcome Cntr. v. Brown, 466 U.S. 147, 149-50 (1984)). "Whenever a party . . . is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice or paper

is served upon the party by mail, 3 days shall be added to the prescribed period." Id.  "And normally it may be assumed, in the absence of challenge, that a notice provided by a government agency has been mailed on the date shown on the notice." Id. (citing Baldwin Cnty. Welcome Cntr., 466 U.S. at 148 & n.1.  Nevertheless, these presumptions rebuttable.  Id.  "If a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive." Id. (citing Smith v. Local Union 28 Sheet Metal Workers, 877 F. Supp. 165, 172 (S.D.N.Y. 1995), aff'd, 100 F.3d 943 (2d Cir. 1996)).

### b.  Sexual Harassment Claims

In addition to the claims of race-based discrimination that he asserted in his administrative complaint, Plaintiff raises in his Complaint allegations that he was sexually harassed by Defendant Vilardi.  "Before an individual may bring a Title VII suit in federal court, the claims forming the basis of such a suit must first be presented in a complaint to the EEOC or the equivalent state agency." Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 69 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-5). Here, the ShopRite Defendants correctly observe that Plaintiff makes no reference to any sexual harassment claims in his EEOC Charge of Discrimination ("Charge").[7]  Therefore, Plaintiff's sexual harassment claims are outside of the scope of the EEOC charge and subject to

---

[7]  A court "may consider documents that are referenced in the Complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken." Avgerinos v. Palmyra-Macedon Cent. Sch. Dist., 690 F. Supp. 2d 115, 124 (W.D.N.Y. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)); see also Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006); Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991). Because Plaintiff refers in his Complaint to having filed the Charge, the Court concludes that it may properly consider the Charge without converting either of the Motions to dismiss to one for summary judgment.

dismissal. See Carter v. New Venture Gear, Inc., 310 F. App'x 454, 458 (2d Cir. 2009). Further,

Plaintiff alleges that the two inappropriate comments that constituted sexual harassment under Title

VII were made in November 2010 and October 2011, respectively. The offending incidents

occurred more than 300 days ago, and given that they were in no way referenced in the EEOC

Charge, these claims may not be properly brought. Because any amendment of these claims would

therefore be futile, Plaintiff's sexual harassment claims are dismissed with prejudice.

### c. Race-Based Claims

The ShopRite Defendants argue that Plaintiff's race-based claims under Title VII are barred

because Plaintiff failed to commence this suit within 90 days of receiving his right-to-sue letter.

ShopRite Mot. at 5-7. The right-to-sue Letter was mailed on December 29, 2011, and the

Complaint was filed on April 9, 2012. The ShopRite Defendants contend that the Court "must

assume that Plaintiff received the Right to Sue Letter on January 3, 2012." Id. at 6 (footnote

omitted). Therefore, the 90-day period would have expired on April 2, 2012. The ShopRite

Defendants' statement about what the Court "must assume," however, is an inaccurate statement of

the law. Sherlock, 84 F.3d at 526. "[S]uch presumptions [about the timing of the mail] are

convenient and reasonable in the absence of evidence to the contrary," but they are not

"irrebuttable." Id. (citing Baldwin Cnty. Welcome Cntr., 466 U.S. at 150 n.4). Mindful of

Plaintiff's *pro se* status and in the interests of justice, the Court concludes that it would be improper

to deny amendment based on a finding of futility relying wholly on a series of "convenient"

presumptions. Therefore, the Court grants Plaintiff leave to amend his Complaint to state Title VII

claims based on racial discrimination against ShopRite, Inc.[8]

---

[8] In so doing, the Court takes no position on whether such claims could survive a properly
filed motion to dismiss. Additionally, the Court notes that in order for Plaintiff's claims to be found

*5. Affirmative Action Clause*

Plaintiff states as his third cause of action that the "Ellenville Shop Rite in a whole is in violation of the affirmative action clause" because of the racial composition of its workforce and management team. Compl. at 5. The Court is unable to determine the source of this cause of action – whether Plaintiff is referring to an affirmative action clause contained in the CBA or whether he believes that one of the aforementioned civil rights statutes contains an "affirmative action clause." Because the Court cannot identify a cognizable legal claim here, the Court dismisses this claim, but, mindful of Plaintiff's *pro se* status, grants Plaintiff leave to amend to clarify both: (1) the legal source of this cause of action; and (2) the facts that might underlie the claim.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant Hassette's Motion (Dkt. No. 29) to dismiss is **GRANTED** consistent with this Memorandum-Decision and Order and all claims against him are **DISMISSED with prejudice**; and it is further

**ORDERED**, that the ShopRite Defendants' Motion (Dkt. No. 15) to dismiss is **GRANTED** consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED** in accordance with this Memorandum-Decision and Order such that: (1) All claims against Defendant Hassette are **DISMISSED with prejudice**; (2) All of Plaintiff's claims under the Sixth and Fourteenth Amendments are **DISMISSED with prejudice**; (3) Plaintiff's sexual harassment claims against the

---

timely, he would have to rebut the presumptions relating to the receipt of mail cited by the ShopRite Defendants.

ShopRite Defendants pursuant to Title VII are **DISMISSED with prejudice**; and (4) all other

claims are **DISMISSED without prejudice with leave to amend** consistent with this

Memorandum-Decision and Order; and it is further

     **ORDERED**, that if Plaintiff wishes to amend his Complaint (Dkt. No. 1) and proceed with

this action, he must do so **within thirty (30) days** from the date of filing of this Memorandum-

Decision and Order.  If Plaintiff does not comply with this Memorandum-Decision and Order in a

timely fashion, however, this matter will be **dismissed without prejudice[9] without further order**

**of the Court**; and it is

     **ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all

parties.

     **IT IS SO ORDERED**.


DATED:      February 14, 2013
            Albany, New York




                      Lawrence E. Kahn
                      U.S. District Judge

---

    [9]  Those claims already expressly dismissed with prejudice by this Memorandum-Decision
and Order, however, will of course remain dismissed with prejudice.